Filed 3/13/23  Sohal v. RS Financial Investments, Inc. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TARLOCHAN SOHAL, | F083318 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. BCV-17-100140) |
| RS FINANCIAL INVESTMENTS, INC., et al., | **OPINION** |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Kern County.  Stephen D. Shuett, Judge.

Moore & Bogener, Inc., and Michael L. Ricks, Jr., for Plaintiff and Appellant.

Sooy & Schlichting and John K. Schlichting for Defendants and Respondents.

-ooOoo-

Plaintiff Tarlochan Sohal (Sohal) appeals from a judgment of dismissal following an order sustaining a demurrer to his first amended complaint without leave to amend. Sohal filed suit against RS Financial to recover title to a portion of real property that was part of a larger tract of property RS Financial acquired from Dipmala Enterprises, Inc. (Dipmala) when RS Financial foreclosed on deeds of trust secured by the larger tract.  In

his first amended complaint, Sohal asserted claims against RS Financial for specific performance, constructive trust, and declaratory relief based in part on a contract Sohal had with Dipmala by which Dipmala agreed to reconvey a portion of the larger tract of property to Sohal after the tract was developed. The trial court sustained RS Financial's demurrer to the first amended complaint without leave to amend.

On appeal, Sohal contends the trial court erred both in sustaining the demurrer and in denying him leave to amend. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Facts Alleged in the First Amended Complaint and Attached Exhibits

Sohal's predecessor-in-interest G&S Truck Wash (G&S) sold 17.9 acres of land to Dipmala in 2004. The "Vacant Land Purchase Agreement and Joint Escrow Instructions" (Purchase Agreement) between G&S and Dipmala provided Dipmala would transfer title to approximately 3.1 acres of the property to G&S and G&S would share in the cost of development. The Purchase Agreement was not recorded.

In August 2005, G&S and Dipmala entered in to a "Memorandum of Agreement" (MOA), which stated it was a memorandum of the unrecorded Purchase Agreement concerning the property. The property was described in an attached exhibit. The MOA stated: (1) Dipmala agreed to purchase the property from G&S, and G&S agreed to sell the property to Dipmala, on the terms and conditions set forth in the Purchase Agreement; (2) the Purchase Agreement "obligates [Dipmala] to promptly subdivide the Property to create one or more parcels in the northwest corner collectively measuring a minimum of 300 feet (frontage along Zachary Road) by 450 feet, clear title to which [Dipmala] shall transfer as soon as possible at no cost back to [G&S], with the remainder of the Property to be [Dipmala]'s; (3) the Purchase Agreement granted G&S the exclusive right to operate truck wash, tire, oil change and automotive and truck repair businesses on the property; (4) "[t]he [Purchase] Agreement binds and insures to the benefit of the heirs, successors and assigns of the parties below"; (5) the MOA is not a

2.

complete summary of the Purchase Agreement and shall not be used to interpret the Purchase Agreement, which controls over the MOA; and (6) the MOA "shall be recorded, and be effective, only upon close of the purchase and sale contemplated herein." The MOA was recorded with the Kern County Recorder's Office in September 2005. In March 2009, Sohal purchased all rights, interests, and obligations G&S had in the Purchase Agreement and MOA.

Beginning in 2011 and continuing through 2014, Dipmala obtained large amounts of hard money loans from RS Financial, secured by deed of trust on the property that allowed the power of sale. Meanwhile, after the initial development of the property, a dispute arose between Sohal and Dipmala over the amount of development costs Sohal was required to pay for the 3.1 acres. Sohal filed a complaint against Dipmala in November 2013, which sought a judicial declaration that he was only required to pay development costs associated with the 3.1 acres, and claimed there was an anticipatory breach of contract because Dipmala was unable to transfer clear legal title to Sohal as it encumbered the property with liens due to the hard money loans obtained from RS Financial.

Sohal obtained summary adjudication against Dipmala on the declaratory relief cause of action in June 2015, with the court declaring Sohal was only responsible for the development costs for the 3.1 acres. In September 2015, Sohal and Dipmala settled the lawsuit. The settlement terms required Dipmala to use its best efforts to complete the development of the property and the mapping process. Sohal was to deposit $185,000 into an escrow account, which was the agreed upon development costs for the 3.1 acres, with escrow to close within nine months after the settlement, at which time the money would be released to Dipmala and Dipmala would transfer clear legal title of the 3.1 acres to Sohal.

Shortly after the settlement, RS Financial foreclosed on the hard money loans and became the owner of the property. Due to the foreclosure, the terms of the settlement

3.

were never effectuated and transfer of clear legal title to the 3.1 acres to Sohal did not occur. In October and December 2016, Sohal's counsel sent letters to RS Financial asking it to comply with the terms of the MOA, but RS Financial did not respond.

***Sohal's Complaint and RS Financial's Motion for Judgment on the Pleadings***

In January 2017, Sohal filed this lawsuit against RS Financial and Khandubhai Patel, Dipmala's manager. The complaint alleged causes of action against RS Financial for specific performance of the MOA and declaratory relief, alleging RS Financial was required to complete development of the 3.1-acre parcel and transfer it to Sohal because it was Dipmala's successor-in-interest under the MOA.

RS Financial answered the complaint but later filed a motion for judgment on the pleadings, in which it argued Sohal could not enforce the terms of the MOA against RS Financial because there was no privity of contract or estate. In opposition to the motion, Sohal conceded there is no privity of contract but asserted RS Financial nevertheless was bound by the MOA's terms because the MOA contains a covenant running with the land.

The trial court granted the motion with leave to amend. The trial court found the specific performance claim did not state a viable cause of action because Sohal did not allege he held a property interest that would allow him to enforce a covenant running with the land, and the declaratory relief claim failed given the lack of either privity of contract or sufficient factual allegations to allege a right to enforce the MOA against RS Financial. The trial court noted it was not deciding whether the MOA could be considered a covenant running with the land given its lack of such language as the parties had not addressed the issue.

***The First Amended Complaint***

Sohal subsequently filed a First Amended Complaint (FAC), in which he alleged causes of action against RS Financial for specific performance, constructive trust, and declaratory relief. Sohal continued to allege RS Financial was the owner of the property, but also alleged he held "beneficial title" to the 3.1 acres. Sohal alleged he was entitled

4.

to specific performance of the MOA because RS Financial was Dipmala's successor-in-interest and sought a judicial determination of the parties' rights and duties under the MOA.

On the constructive trust claim, Sohal alleged because RS Financial made the hard money loans with knowledge of Sohal's "senior interest" in the property, as the MOA was recorded before the loans were made, RS Financial became the successor-in-interest to Dipmala's obligations under the MOA when it foreclosed on the loans. Sohal alleged RS Financial would be unjustly enriched if it were allowed to retain title to the 3.1 acres and sought to impose a constructive trust over that portion of the property.

### RS Financial's Demurrer

RS Financial demurred to the FAC on the grounds the causes of action alleged against it failed to state facts sufficient to constitute a cause of action and were uncertain, and the constructive trust claim also failed because constructive trust is not a viable cause of action but rather a remedy.

RS Financial argued to obtain relief on the contract-based causes of action for specific performance and declaratory relief, Sohal must show he has privity with RS Financial. RS Financial asserted to prevail on the theory that the MOA created a covenant running with the land, Sohal must be able to show the covenant was recorded, but he could not do so as the only recorded document, the MOA, does not state a covenant exists, describe the land subject to the covenant, or state what the land can be used for. Therefore, the contract-based causes of action must fail as Sohal was unable to show he had any type of privity with RS Financial.

RS Financial asserted to have a constructive trust imposed, facts supporting an underlying cause of action, such as fraud or breach of fiduciary duty, must be pled. Sohal, however, had not alleged sufficient facts for either fraud or breach of fiduciary duty against RS Financial, or alleged RS Financial obtained the property by some wrongful act. To the contrary, Sohal alleged facts showing RS Financial rightly and

5.

lawfully obtained ownership of the property by foreclosing on liens recorded on the property that allowed the power of sale. While Sohal appeared to be alleging RS Financial was wrongfully detaining property for his benefit, if that claim was made based on a contract, it must fail because he lacks privity with RS Financial.

In opposition, Sohal asserted the MOA includes language showing a covenant exists on the property. Sohal pointed out the MOA together with the Purchase Agreement, through express reference in the MOA, is the instrument containing the covenant, which satisfies the requirements of Civil Code[1] section 1468, as: (1) it contains the legal description of the property in the exhibit attached to the MOA; (2) the MOA provides, "The Agreement binds and insures to the benefit of the heirs, successors and assigns of the party below," which includes successive owners of the property; and (3) the Agreement requires the property to be subdivided and clear title transferred to Sohal. Sohal argued the instrument containing the covenant was recorded, as the MOA incorporated the Agreement, and the MOA was recorded.

On his constructive trust claim, Sohal admitted he did not allege fraud against RS Financial, but he did allege it against Patel,[2] and Patel's fraud resulted in Sohal not receiving the 3.1 acres of property that were subject to the settlement agreement in the prior lawsuit. Sohal asserted the court could impose a constructive trust on the property compelling RS Financial to convey the 3.1 acres to him since legal title to the property resided with RS Financial due in part to Patel's fraud. Sohal asserted RS Financial was

---

[1]     Further undesignated statutory references are to the Civil Code.

[2]     The FAC alleged a fraud claim against Patel as follows: (1) at the time of the settlement, Patel represented to Sohal that he would be able to transfer clear title to the 3.1 acres to Sohal within nine months; (2) Patel's representation was a false statement that he knew was false when he made it; (3) Patel intended Sohal to rely on the representation and dismiss the first lawsuit against Dipmala on the remaining cause of action for anticipatory breach, which Sohal reasonably relied on in dismissing the first lawsuit and creating an escrow account for development costs; and (4) due to Patel's false representation, Sohal was harmed.

6.

not an innocent party, as it was aware of his contractual rights to the property before it acquired an interest in it, and RS Financial was trying to deprive Sohal of those rights.

Although Sohal contended the FAC adequately alleged all claims, he requested leave to amend to allege "conspiratorial liability against RS Financial" with the following additional allegations:  (1) Patel was the agent, proxy, or otherwise legally responsible person for Dipmala's conduct and therefore responsible for Dipmala's acts and omissions; (2) years after the Agreement was entered into, RS Financial and Patel "knowingly and willfully conspired and agreed among themselves to damage Sohal by depriving him of the benefits of the Agreement, by inducing Patel to breach said Agreement," as shown by RS Financial providing Patel hard money loans "wrongfully secured by deeds of trust" on the property, which "purported to allow for the power of sale"; (3) in furtherance of the conspiracy, Patel breached the Agreement by failing to complete the subdivision, development, and reconveyance of the 3.1 acres and wrongfully defaulting on RS Financial's deeds of trust, which RS Financial wrongfully foreclosed on; (4) Patel's breach of the Agreement was the direct and proximate result of RS Financial's wrongful acts pursuant to the conspiracy; and (5) RS Financial's last overt act in furtherance of the conspiracy was failing to respond to Sohal's counsel's requests for RS Financial to perform Patel's contractual obligations.

In reply, RS Financial argued the circumstances of the land sales transaction showed a covenant running with the land could not have been created.  Through Sohal's allegations in the FAC, Sohal admitted he is not the current legal owner of any of the land at issue and the land Sohal claimed had a covenant on it was one piece of property, but to create a covenant there must be two properties—one that will be subject to the covenant's burden and the other that will receive the covenant's benefit.  While Sohal claimed the covenant was created when the property was sold to Dipmala, that transaction resulted in Dipmala becoming the sole owner of the property and Dipmala could not create restrictions on its own property.  Moreover, Sohal admitted a necessary term of the

7.

alleged covenant was not contained in the recorded MOA, namely, that the MOA does not include a description of the act required by section 1468, subdivision (c).

RS Financial argued Sohal could not maintain a constructive trust claim based on Patel's fraud because Patel no longer possessed the property. While a constructive trust could be imposed if RS Financial wrongfully detained the property, Sohal would have to show that detention was wrongful, but Sohal alleged RS Financial legally obtained the property through a lawful foreclosure.

Finally, RS Financial argued Sohal should not be given leave to amend because the FAC's legal defects could not be cured by amendment and any effort to allege a viable cause of action against RS Financial based on the theories alleged would be futile. RS Financial noted Sohal asserted that if he were allowed to file a second amended complaint, he would include a completely new cause of action for conspiratorial fraud based on facts not previously pled, but those facts would have existed when he filed his original complaint and FAC. RS Financial posited that if Sohal felt this was a meritorious claim, he would have pled it in his original complaint or FAC, and his plea for a chance to "allege a new significant cause of action, must be looked at with extreme skepticism" and "a last ditch effort to try and make it through the pleading stage."

At the outset of oral argument on the demurrer, the trial court explained its tentative was to sustain the demurrer without leave to amend, as it did not appear Sohal would ever be able to require RS Financial to step in for purposes of developing the property, the documents did not create a covenant running with the land, and even if they created a covenant, it did not find an ownership interest that would meet the case law's requirements. At the conclusion of oral argument, the trial court made the tentative its order and sustained the demurrer without leave to amend.

The trial court subsequently issued a written order sustaining the demurrer without leave to amend and dismissing the FAC against RS Financial with prejudice. In that order, the trial court stated it ruled the recorded MOA did not create a covenant running

8.

with the land; Sohal did not have privity of contract or estate with RS Financial; and Sohal's alleged causes of action were not viable without privity.

## DISCUSSION

**I.** **Standard of Review**

We review an order sustaining a demurrer de novo. (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.) "[W]e accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 (*Yvanova*).) "The pleader's contentions or conclusions of law are not controlling because appellate courts must independently decide questions of law without deference to the legal conclusions of either the pleader or the trial court." (*Villery v. Department of Corrections & Rehabilitation* (2016) 246 Cal.App.4th 407, 413.)

We also consider exhibits attached to a complaint, and "[i]f facts appearing in the exhibits contradict those alleged, the facts in the exhibits take precedence." (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447; see *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627 ["facts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence"].) "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the [trial] court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324; accord, *E. L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 504, fn. 2 [validity of the trial court's action, not the reason for its action, is what is reviewable].)

"To determine whether the trial court should, in sustaining the demurrer, have granted plaintiff leave to amend, we consider whether on the pleaded and noticeable facts there is a reasonable possibility of an amendment that would cure the complaint's legal

9.

defect or defects.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)" (*Yvanova*, *supra*, 62 Cal.4th at p. 924.)  If we see such a reasonable possibility "then we conclude that the trial court abused its discretion in denying leave to amend.  If we determine otherwise, then we conclude it did not."  (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.)  "The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## II.     The Specific Performance and Declaratory Relief Claims

Sohal's claims for specific performance and declaratory relief allege the MOA required RS Financial, as Dipmala's successor-in-interest, to complete development of the 3.1 acres and transfer legal title to that portion of the property to Sohal.  Sohal asserts RS Financial is bound by the MOA's terms because the recorded MOA created a covenant that runs with the land under section 1468.

"A covenant running with the land is created by language in a deed or other document showing an agreement to do or refrain from doing something with respect to use of the land."  (*Committee to Save the Beverly Highlands Homes Assn. v. Beverly Highlands Homes Assn.* (2001) 92 Cal.App.4th 1247, 1269.)  The only covenants that run with the land are those specified by statute "and those which are incidental thereto." (§ 1461.)  "A covenant can run with the land under … section 1468."  (*Self v. Sharafi* (2013) 220 Cal.App.4th 483, 488.)[3]

Section 1468 provides in part:  "Each covenant, made by an owner of land with the owner of other land or made by a grantor of land with the grantee of land conveyed, or made by the grantee of land conveyed with the grantor thereof, to do or refrain from doing some act on his own land, which doing or refraining is expressed to be for the benefit of the land of the covenantee, runs with both the land owned by or granted to the

---

[3]     While a covenant can also run with the land under section 1462, that statute requires the covenant to be "contained in a grant of an estate of real property."  (§ 1462; *Self v. Sharafi*, *supra*, 220 Cal.App.4th at pp. 488, 489.)  That is not the case here.

10.

covenantor and the land owned by or granted to the covenantee and shall … benefit or be binding upon each successive owner, during his ownership….”

All of the following requirements must be met for a covenant which imposes a burden upon the land to run with the land: “(1) it must include a particular description of the land of the covenantor and the land of the covenantee; (2) it must state expressly that successive owners of the land are to be bound by the covenant for the benefit of the land owned by or granted to the covenantor and the land owned by or granted to the covenantee; (3) it must establish a covenant which relates to the use, repair, maintenance or improvement of, or payment of taxes and assessments on, such land or some part thereof; and (4) it must be recorded in the county where the property is situated. (Civ. Code, § 1468.)”[4] (*Soman Properties, Inc. v. Rikuo Corp.* (1994) 24 Cal.App.4th 471, 482, disapproved on other grounds in *Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 360–363, 366.)

“The primary characteristic of a covenant running with the land is that both liability upon it and enforceability of it pass with the transfer of the estate. The benefits or burdens pass by implication of law rather than under principles of contract. However, if the promise is merely a ‘personal covenant’—one not fulfilling the requisites of a

---

[4] Section 1468 lists the requirements that must be met as follows: “(a) The land of the covenantor which is to be affected by such covenants, and the land of covenantee to be benefited, are particularly described in the instrument containing such covenants; [¶] (b) Such successive owners of the land are in such instrument expressed to be bound thereby for the benefit of the land owned by, granted by, or granted to the covenantee; [¶] (c) Each such act relates to the use, repair, maintenance or improvement of, or payment of taxes and assessments on, such land or some part thereof, or if the land owned by or granted to each consists of undivided interests in the same parcel or parcels, the suspension of the right of partition or sale in lieu of partition for a period which is reasonable in relation to the purpose of the covenant; [¶] (d) The instrument containing such covenants is recorded in the office of the recorder of each county in which such land or some part thereof is situated.”

covenant running with the land—it is enforceable at law only against the original parties thereto." (*Anthony v. Brea Glenbrook Club* (1976) 58 Cal.App.3d 506, 510; see § 1460.)

Sohal contends the MOA satisfied all the requirements for creating a covenant running with the land; therefore, as alleged in the FAC, RS Financial is required to "complete development of the 3.1 acres … and transfer legal title" to him. The fatal flaw in Sohal's claim of a covenant running with the land is that there were not two parcels of land when the covenant was alleged to have been created. By its terms, section 1468 requires two parcels of land to create a covenant that runs with the land—one that is burdened by the covenant and another that receives the benefit of the covenant. Section 1468 provides the covenant must require one property owner "to do or refrain from doing some act on his own land," which must be "expressed to be for the benefit of the land of the covenantee." The statute further provides that the covenant "runs with both the land owned by or granted to the covenantor and the land owned by or granted to the covenantee," which indicates there must be two parcels of land.

But here, Sohal's predecessor sold the entire property to Dipmala. Though the parties intended the 3.1-acre portion of the property to be benefited by Dipmala's promise to develop that parcel, Sohal alleged the entire property, including the 3.1 acres he alleges Dipmala was required to transfer to him, was sold to Dipmala. Sohal does not allege, however, that the property was ever subdivided; to the contrary, he alleges the property was foreclosed upon before the 3.1-acre portion of the property was transferred to him. Without the creation of two parcels, a covenant running with the land was never created. (See, e.g., *Soman Properties, Inc. v. Rikuo Corp.*, *supra*, 24 Cal.App.4th at p. 482 [where same person owned both parcels when he recorded document intended to create covenant imposing burden on one parcel, the recordation of the document did not, in and of itself, create covenants running with the land under section 1468].)

Sohal asserts it is enough that the MOA was made between the grantee of land, namely, Dipmala, and the grantor of land, namely, himself. Sohal, however, ignores the

12.

other requirements of the statute, which as we have stated requires a covenant that burdens the land of the covenantor and benefits the land of the covenantee. Since Sohal has not alleged two parcels of land were created, Sohal cannot state claims for specific performance or declaratory relief based on the alleged covenant running with the land. Furthermore, Sohal has not demonstrated he is able to make such an allegation if granted leave to amend.

Moreover, under California law, a covenant running with the land generally can be enforced only by one with a current ownership interest in the tract intended to be benefited by the covenant. (*B.C.E. Development, Inc. v. Smith* (1989) 215 Cal.App.3d 1142, 1148; *Kent v. Koch* (1958) 166 Cal.App.2d 579, 584 [grantor cannot enforce restrictive covenants made for the benefit of other property retained by the grantor after he no longer owns the property benefited].) "One who no longer owns land in a development subject to reciprocal restrictions cannot enforce them, absent showing the original covenanting parties intended to allow enforcement by one who is not a landowner." (*Farber v. Bay View Terrace Homeowners Assn.* (2006) 141 Cal.App.4th 1007, 1011.)

Sohal has not alleged he owns any portion of the property. He argues under the MOA, he was expressly intended to be a party who could enforce the covenant because the MOA provides "[t]he Agreement binds and insures to the benefit of the heirs, successors, and assigns of the parties below." Sohal reasons that because the FAC alleges he is G&S's successor, he can enforce the covenant as a successor. This provision, however, pertains to the Purchase Agreement, not the MOA. There is no language in the MOA that indicates the original contracting parties intended the covenant alleged to be contained in the MOA could be enforced by someone who was not a landowner.

Sohal also contends he did allege an ownership interest in the property by alleging he held "beneficial title to the 3.1 acres" of the property. Sohal, however, does not cite

13.

any authority to support his contention that someone claiming beneficial title may enforce a covenant running with the land. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["[a]n appellant must provide an argument and legal authority to support his contentions"; when an appellant fails to support his point with citation to authority we may disregard it].)

For both these reasons—the inability to allege the existence of two parcels of property and that Sohal did not own any part of the property—the trial court did not err in sustaining the demurrer to Sohal's claims for specific performance and declaratory relief.

## III.  The Constructive Trust Claim

In his constructive trust claim, Sohal alleges:  Sohal obtained a beneficial interest in the 3.1-acre parcel when the MOA was recorded; RS Financial granted the loans to Dipmala secured by the property and recorded the deeds of trust "with knowledge of [Sohal]'s senior interest in the property"; when RS Financial foreclosed on the loans, it held only legal title to the parcel and became Dipmala's successor-in-interest as to Dipmala's obligations under the MOA; RS Financial has refused to perform their obligations under the MOA by transferring legal title of the parcel to Sohal; RS Financial would be unjustly enriched if it retained legal title to the parcel, as Sohal holds beneficial title to the parcel; and RS Financial continues to wrongfully detain the parcel even though it is not entitled to it.

"A constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner.  [Citations.]  The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing." (*Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 990.)

The statutory bases for constructive trusts are stated in sections 2223 and 2224. Section 2223 provides:  "One who wrongfully detains a thing is an involuntary trustee

14.

thereof, for the benefit of the owner." Section 2224 provides: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

Sohal has not alleged facts to support imposing a constructive trust under section 2224. To impose a constructive trust under section 2224, there must be proof of the plaintiff's right to property and the defendant's fraud, accident, mistake, undue influence, violation of trust, or other wrongful act. The defendant must have acquired property to which he is not justly entitled. (*Mazzera v. Wolf* (1947) 30 Cal.2d 531, 535; *Rankin v. Satir* (1946) 75 Cal.App.2d 691, 695.) To create a constructive trust, three conditions must be met: (1) the existence of property or some interest in property; (2) the plaintiff's right to the property; and (3) the defendant's gain of the property by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act. (*Kraus v. Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 373.)

Here, the FAC does not allege RS Financial acquired the property by committing a wrongful act. To the contrary, the FAC alleges RS Financial obtained title to the property through legal means—by foreclosing on loans that were subject to a deed of trust with the power of sale. Sohal asserts RS Financial acquired title to the 3.1-acre parcel of the property by accident or mistake because it "failed to discover or appreciate the recorded MOA, and [Sohal]'s senior interest in the Subject Property." But even if failing to discover a senior interest in the property constitutes a wrongful act within the meaning of section 2224, that did not result in RS Financial's acquisition of the property. Put another way, RS Financial did not acquire the property *by* failing to discover Sohal's interest in the property. Instead, it acquired the property by foreclosing on the deeds of trust. Accordingly, Sohal has not shown he has stated a claim for constructive trust based on RS Financial's wrongdoing or through accident or mistake.

15.

Sohal alternately contends a constructive trust arose from Dipmala's breach of its obligation to reconvey clear title to the 3.1-acre parcel to him as stated in the Purchase Agreement and settlement agreement. Sohal asserts Dipmala acquired title to the parcel on the promise to reconvey it; the only reason he does not have the parcel is because Dipmala breached that obligation; and RS Financial could not acquire greater rights in the property than those previously held by Dipmala. Therefore, Sohal reasons RS Financial is an involuntary trustee of the parcel.

While Sohal claims any subsequent owner of the property may be a constructive trustee if they receive the property from an earlier constructive trustee, the cases Sohal cites in his opening brief do not support his assertion. In *Lauricella v. Lauricella* (1911) 161 Cal. 61, 63, a husband conveyed two parcels of property to his wife with an oral agreement that on his death she would convey half the property to his parents. The Supreme Court held the wife committed fraud when she refused to convey the property to his parents following his death, thereby becoming the involuntary trustee of the property under section 2224. (*Lauricella*, at pp. 66–67.) In *Bainbridge v. Stoner* (1940) 16 Cal.2d 423, 428–429, the Supreme Court concluded a director of a corporation who was alleged to have secretly planned and executed a project whereby he acquired title to corporate property in defiance of the rights of the corporation and its stockholders was a constructive trustee for the corporation and its stockholders. Neither case involved a subsequent property owner or holder.

In his reply brief, Sohal cites to *Church v. Bailey* (1949) 90 Cal.App.2d 501, which held an employee who misappropriates his employer's funds is chargeable as a constructive trustee for the funds so received and a trust will be impressed on property the employee acquires with such funds. (*Id.* at pp. 503–504.) In so holding, the court stated: "One who wrongfully detains funds of another is an involuntary trustee thereof for the benefit of the owner, and a trust will be impressed upon property acquired with

16.

such funds unless the same is held by a bona fide purchaser for value without notice in good faith." (*Id.* at p. 504.)

However, where a defendant is shown by the pleadings to hold legal title, it is the plaintiff's burden to plead and prove the defendant was not an innocent purchaser for value; the plaintiff must allege such fact or that the defendant took title with notice or knowledge of the original trustee's unauthorized act. (*Firato v. Tuttle* (1957) 48 Cal.2d 136, 138.) The FAC alleges RS Financial holds legal title to the parcel, but fails to allege RS Financial was not an innocent purchaser or that it took title at the foreclosure sale with knowledge of Dipmala's breach of contract or other wrongful act. While Sohal alleged RS Financial was on notice of Dipmala's obligation to reconvey the parcel to it under the recorded MOA, subsequent events could have nullified this obligation. It is incumbent on Sohal to allege RS Financial was not a bona fide purchaser to state a claim for wrongful detention of the property.

Therefore, the constructive trust claim, as alleged, fails to state a claim for relief.

## IV. Denial of Leave to Amend

Sohal contends the trial court abused its discretion in denying leave to amend the FAC. "[N]otwithstanding the liberal policy favoring amendment of complaints, upon sustaining a demurrer to a first amended complaint, the court may deny leave to amend when the plaintiff fails to demonstrate the possibility of amendments curing the first amended complaint's defects." (*Hedwall v. PCMV, LLC* (2018) 22 Cal.App.5th 564, 579.)[5]

---

[5] Sohal asserts in his reply brief that an abuse of discretion results from the denial of leave to amend unless the complaint shows on its face it is incapable of amendment. But the case he relies on for this proposition, *Eghtesad v. State Farm General Ins. Co.* (2020) 51 Cal.App.5th 406, 411, was addressing demurrers to the original complaint, not demurrers to subsequent complaints.

"To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary. [Citation.] [¶] The burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. [Citation.] Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44.)

Sohal does not contend he can amend the FAC to save the currently pled causes of action. Instead, he asserts he showed a reasonable possibility he "could amend to state a case for conspiratorial liability against RS Financial for Dipmala's breach of the Vacant Land Purchase Agreement/settlement agreement."

The elements of a claim of civil conspiracy "are (1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062.) Under California law, civil conspiracy is not an independent tort. (*Kesmodel v. Rand* (2004) 119 Cal.App.4th 1128, 1141.) Instead, it is a legal doctrine that imposes liability on persons who share with the immediate tortfeasors a common plan or design in the perpetration of a tort, but do not actually commit the tort themselves. (*Ibid.*) Consequently, the legal significance of a civil conspiracy claim is that each member of

18.

the conspiracy may be held directly responsible as a joint tortfeasor, regardless of actual participation in the tortious act itself.  (*Id.* at p. 1141, fn. 30.)

To state a claim for civil conspiracy, the complaint must allege acts that give rise to a tort cause of action without the conspiracy; absent such an allegation, the conspiracy allegation is meaningless.  (*Manor Investment Co. v. F.W. Woolworth Co.* (1984) 159 Cal.App.3d 586, 595.)  Moreover, the defendants must have actual knowledge of the planned tort and concur in the tortious scheme with knowledge of its unlawful purpose.  (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1582.)  A plaintiff must show a defendant knew of the alleged tortious scheme and intentionally joined the scheme for the purpose of injuring the plaintiff.  (*Ibid.*)

Sohal asserts the conspiracy claim he means to allege is based on Dipmala's breach of contract, i.e., the breach of the contractual obligation to reconvey the parcel. Sohal states this claim would allege:  "RS Financial and Patel … knowingly and willfully conspired and agreed among themselves to damage Sohal by depriving him of the benefits of the Agreement, by inducing Patel to breach said Agreement."  Sohal, however, cannot maintain a conspiracy claim based on the breach of Dipmala's contract with him because a party to a contract cannot be held liable in tort for conspiracy to interfere with its own contract.  (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 514.)  This is because a party to a contract does not have a tort duty not to interfere with contract performance; a contracting party's only duty is to perform according to the contract's terms.  (*Ibid.*)  " 'To impose tort liability upon the contract breaker because of the involvement of a third person (when liability is limited to contract damages when the contract breaker is acting alone) undermines the policies which have developed limited contractual liability.' "  (*Id.* at p. 517.)

While it appears Sohal would assert this claim only against RS Financial, it would only be a conspiracy if another party were involved, namely, Patel acting for Dipmala. But as we have stated, Patel cannot conspire to breach Dipmala's contract.

Noncontracting parties can be liable in tort for intentionally interfering with the performance of a contract or inducing another to breach the contract. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, *supra*, 7 Cal.4th at pp. 513–514 [interference with contract]; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55–56 [inducing breach of contract].)[6] Perhaps this is what Sohal intended to assert against RS Financial instead of a civil conspiracy claim. But it was his burden to present legal authority showing the viability of this new cause of action. (*Rakestraw v. California Physicians' Service*, *supra*, 81 Cal.App.4th at p. 44.) Because he failed to do so he has not satisfied his burden of showing the trial court abused its discretion in denying leave to amend.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to RS Financial.

DE SANTOS, J.

WE CONCUR:

MEEHAN, Acting P. J.

SNAUFFER, J.

---

[6] "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.)